IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RAEVIN B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:25CV831 |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND MEMORANDUM OPINION
OF UNITED STATES MAGISTRATE JUDGE**

The plaintiff, Raevin B. ("Raevin"), brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for social security disability insurance benefits and a period of disability.[1] The Court has considered the certified administrative record and dispositive briefing from the parties. Because substantial evidence supports the determination of the Administrative Law Judge ("ALJ"), the Court will deny Raevin's request for the award of benefits or for a remand, as set forth below.

I. PROCEDURAL HISTORY

Raevin filed an application for disability insurance benefits and a period of disability in July of 2022, alleging a disability onset date of June 15, 2022, later amended to September 19, 2022. (Tr. 181-87, 221, 17.) The applications were denied initially and upon reconsideration. (Tr. 106-09, 112-14.) After two hearings,[2] the Administrative Law Judge ("ALJ") determined on August 30, 2024 that Raevin was not disabled under the Act. (Tr. 17-76.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for review. (Tr. 1-6.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 4. By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings

in this case pursuant to 28 U.S.C. § 636(c). Docket Entry 11.

[2] A supplemental hearing was held after technical issues ended the first hearing. (Tr. 17.)

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Raevin is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 404.1520, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *See Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Raevin had not engaged in substantial gainful activity since the alleged onset date. (Tr. 19.) The ALJ next found the following severe impairments at step

two: degenerative disc disease; depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorder; and post-traumatic stress disorder ("PTSD"). (Tr. 20.) At step three, the ALJ found that Raevin did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 20.)

The ALJ next set forth Raevin's Residual Functional Capacity ("RFC") and determined that she could perform a reduced range of medium work as follows:

> specifically, the claimant can lift and/or carry up to 50 pounds occasionally and up and 25 pounds frequently; she is [sic] sit, stand, and walk up to six hours each in an eight-hour workday; she can push/pull as much as she can lift/carry; further, she is able to understand, remember and carryout instructions by performing simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work); she is able to perform simple work-related decisions; she can frequently interact with supervisors, and occasionally interact with coworkers and the public; and the claimant's time-off task can be accommodated by normal breaks.

(Tr. 22-23.) At the fourth step, the ALJ determined that Raevin was unable to perform her past relevant work. (Tr. 30.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Raevin could perform. (Tr. 30.)

IV. DISCUSSION

In her appeal, Raevin asserts only that "[t]he ALJ erred by failing to evaluate and account for [her] therapy animal usage in the RFC assessment." Docket Entry 8 at 4. The record demonstrates otherwise, as set forth below.

A. The RFC Determination

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines*, 453 F.3d at 562. The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional

3

limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotations omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three

components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). Failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need

4

not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 404.1529(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of his pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Additionally, the longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed. *See* 20 C.F.R. § 404.1520c(a) (effective March 27, 2017). Now, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* Nevertheless, an ALJ must consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior medical finding in a claimant's case record. *See id.* § 404.1520c(b). When a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings as a class. *See id.* § 404.1520c(b)(1). The ALJ is "not required to articulate how [she]

5

considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

As to persuasiveness, the ALJ must articulate two factors: supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* § 404.1520c(c)(1); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853. The ALJ must only address the three other persuasiveness factors—relationship with the claimant, specialization, and the catchall "other factors"—when two or more medical opinions, or prior administrative medical findings about the same issue, are equally persuasive in terms of supportability and consistency. *Id.* §§ 404.1520c(b)(3), 404.1520c(c)(3)-(5).

Furthermore, "[s]tatements that [claimants] are or are not disabled, . . . able to work, or able to perform regular or continuing work," are statements on an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3). And statements on issues reserved to the Commissioner are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(1)-(3). The regulations also make clear that, for such claims, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c).

Last, though there appears to be no binding Fourth Circuit precedent, other courts have found that the use of a therapy/service animal must be medically necessary (for example, medically prescribed or recommended) to be considered in an RFC assessment. *See Shue v. O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024) (unpublished) *affirming*, 2023 WL 3727935, at *6 (E.D. Va. May 30, 2023) ("A prescription has reasonably been considered adequate evidence of necessity, which would trigger a duty for the ALJ to address the service animal's role and impact on the claimant's RFC, while a lack of a prescription or other credible medical documentation may indicate the animal is not medically necessary."). However, the Fourth Circuit has noted that the medical necessity standard "appears to be in tension with the requirement that the RFC be based on all the relevant medical *and other evidence* found in the record." *Shue*, 2024 WL 2827936, at *3 (emphasis added).

B. The RFC Is Legally Correct, Well-Supported, and Susceptible to Review.

Here, regardless of whether the "medical necessity" standard or the "all the relevant medical and other evidence" standard applies, the ALJ in this case adequately explained in a manner susceptible to judicial review why the RFC did not warrant the inclusion of a therapy animal. Instead, the ALJ concluded, in a decision supported by substantial evidence, that Raevin could perform a range of medium work with numerous mental limitations. (Tr. 22.)

Specifically, the ALJ began his RFC assessment by summarizing at length Raevin's testimony. (Tr. 23-24.) And, in pertinent part, the ALJ noted that Raevin testified that she "lives by herself in an apartment with a therapy dog, stating that the therapy dog helps . . . with her anxiety, depression, and bipolar disorder. She stated that the therapy dog [provides] reminders of [sic] during the day of things such as when to go to bed, and reminds [her] to eat." (Tr. 23.)

Nevertheless, the ALJ decided not to fully credit all of Raevin's allegations, including any allegation that she required a therapy animal to function in the workplace. Specifically, the ALJ explained that Raevin's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . ." (Tr. 24.) The ALJ thus performed the first step of the *Craig* analysis. Next, the ALJ performed step two of the analysis, concluding that Raevin's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 24.) As shown below, the ALJ then gave good reasons for partially discounting her subjective allegations (which includes any purported need for a therapy animal in the workplace), which are the same reasons that also support the ALJ's overall RFC determination.

First, the ALJ accurately pointed to Raevin's sparse mental health treatment, explaining that

> for her mental health impairments, the claimant has had sparse medical treatment. Although she alleges that she became too limited to work as of September 2022, she had only been seen on three occasions for mental health treatment in July 2022, and did not seek any additional mental health treatment until November 2023. She began consistent outpatient therapy sessions in January 2024, but did not begin any medication until June 2024.

Tr. 27, 427-30 (7/1/2022), 431-34 (7/7/2022), 435-38 (7/21/2022), 369-78 (11/20/2023), 400-12, 407 (11/20/23) ("not open to psychotropic medications at this time"), 379-89 (1/31/24), 390-91 (2/7/2024), 392-

94 (2/15/2024), 395-96 (2/21/2024), 413-23 (1/30-31/2024), 440-42 (4/12/2024), 443-45 (4/15/2024), 446-48 (4/25/2024), 449-51 (5/7/2024), 452-54 (5/14/2024), 455-57 (5/21/2024), 458-60 (5/28/2024), 461-63 (6/11/2024), 464-66 (6/18/2024), 467-68 (7/7/24), 471-73 (6/21/2024) ("Currently w/o medications for few years and agreed to medication management and OPT . . . . Wants to try new medication or holistic remedy."), 474-76 (7/2/2024), 477-79 (7/9/2024), 480-82 (7/16/2024), 483-85 (7/30/2024).

Raevin has not challenged this finding, and it supports the ALJ's conclusion that she did not suffer from disabling mental health impairments. *See Lewis v. Colvin*, No. 3:12-CV-08073, 2013 WL 6145811, at *21 (S.D. W.Va. Nov. 21, 2013) ("Claimant's sparse mental health treatment is inconsistent with her claim of severe impairment due to PTSD. The overall paucity of treatment records reflecting any limiting complaints or symptoms of PTSD undercuts Claimant's reports of symptoms to the consultative examiners.") (citing *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (holding that "it was not improper for the ALJ to consider the level and type of treatment [the claimant] sought and obtained in determining what weight to accord her allegations" of symptoms and severity).

Second, in supporting his RFC determination and subjective complaints assessment, the ALJ pointed to Raevin's extensive daily activities. For example, the ALJ pointed out that at a consultative physical examination in March 2023, Raevin stated that she lived independently. (Tr. 22, 335.) She also stated that she was able to do household chores like cooking, cleaning, washing dishes, laundry, and that she was able to take care of her hygiene. (Tr. 21, 335.) She reported at another March 2023 consultative examination that her daily routine consisted of caring for her dog, completing chores, and grooming. (Tr. 26, 343.) She stated that she was able to drive and could grocery shop independently although she generally used Instacart. (Tr. 26, 343.) Also, during therapy, she reported that she was able to live independently, dated, was working towards her degree (receiving an A in a class in 2024), and also started her own business. (Tr. 21, 26-27, 379, 413, 427, 428, 431-32, 435-36, 455, 449.)

In fact, she was interviewed for this business, participated in the filming of a one-hour video regarding the business, and sustained an active social medial presence and website for her business. (Tr. 21, 24, 26-27, 60-62, 446, 449.) The ALJ further pointed out that Raevin also hosted a "yoga event" in 2024. (Tr. 26, 63-64, 330, 390, 438, 452 ("She mentioned that she hosted a yoga event"), 343 ("She has attempted odd jobs like

teaching yoga but proved unsuccessful due to issues with location.").) Raevin has not challenged the ALJ's assessment of her activities of daily living and these extensive activities further support the ALJ's RFC determination as well as his decision to partially discount her allegations of total disability, including any allegation that she required a therapy animal in the workplace. *See Monroe*, 826 F.3d at 189 (listing daily activities as the type of non-medical evidence an ALJ may consider in assessing the RFC); 20 C.F.R. § 404.1529(c)(3)(i) (listing activities of daily living as a relevant factor to consider in assessing subjective allegations).

Third, the ALJ pointed to Raevin's generally normal mental status examinations. (Tr. 21 ("Mental status examinations noted that her thought process and thought content were normal, she was oriented on all planes, and that her immediate and remote memory seemed to be within normal range. Additionally, her mental trend and thought content revealed no hallucinations, delusions, persecutions, obsessions, thought control, unusual power, suicidal or homicidal ideation."), 22, 25, 27, 428, 372-75, 403-06, 354-57, 341, 344-47.) Raevin has not challenged the ALJ's assessment of her generally normal mental status reports and this was additional substantial evidence in support of both the ALJ's RFC determination as well as the ALJ's subjective complaints analysis. *See*

*Jill J. v. Dudek*, No. 8:23-CV-5536-WSB, 2025 WL 1009089, at \*12 (D.S.C. Mar. 7, 2025) ("[N]ormal mental status findings, when considered in combination with Plaintiff's conservative treatment during the period under review and Plaintiff's daily activities, provide substantial evidence to support the ALJ's decision as to Plaintiff's mental limitations.").

Fourth, the ALJ addressed numerous medical opinions in assessing Raevin's RFC. Specifically, the ALJ considered the March 2023 opinions of non-examining state agency medical consultant C. Leinweber, DO, as well as a December 2023 opinion of non-examining state agency medical consultant Dr. Scott Murkin, both of whom concluded that Raevin could perform a full range of medium work. (Tr. 28, 89, 100.) The ALJ found these opinions persuasive, because "they had an opportunity to review the entirety of [Raevin's] medical records regarding her physical impairments, including the consultative physical examinations, and their findings are consistent with the relative lack of any physical findings at these examinations." (Tr. 27.)

The ALJ next considered the medical opinions of the non-examining state agency psychological consultants. (Tr. 28.) In May 2023, Dr. Kristin Wiltrout concluded that Raevin could understand and remember at least simple instructions, could sustain concentration and persistence for

9

simple work in a low-stress, non-production environment, could maintain appropriate interactions in the workplace, and could adapt to occasional, predictable changes in a stable work environment. (Tr. 28, 89-91.) Dr. Susan Stanton, another state agency psychological consultant, came to the same conclusion in January 2024. (Tr. 28, 101-03.) The ALJ found these opinions persuasive because the consultants supported their findings with record evidence and their findings were consistent with the medical and other evidence as a whole.[3] (Tr. 28.)

The ALJ next found Dr. Augustin Flores' March 2023 opinion persuasive, which found that Raevin had no limitations with regards to her ability to stand, walk, or sit and found that she would be limited to lifting/carrying/pushing/pulling up to 50 pounds occasionally and up to 25 pounds frequently, and that she had no postural, manipulative, or environmental limitations. (Tr. 28, 339.) He concluded the same following a second consultative physical examination in December 2023. (Tr. 28, 365.) The ALJ found these opinions persuasive, because they were consistent with the record as a whole, which showed that Raevin

had no medical treatment for any physical impairments and further because they were consistent with the lack of any significant findings at Dr. Flores' examination. (Tr. 28.) Raevin has not challenged the ALJ's assessment or Dr. Flores' opinion.

The ALJ next found the March and December 2023 medical opinions of consultative examiners Warren E. Hoskins, LPA HSP, a licensed psychological associate, and Larry Hines, Ph.D., a licensed psychologist only "somewhat persuasive." (Tr. 28-29, 341-48, 352-58.) In both opinions they described Raevin as "emotionally fragile" with mild to moderate difficulties negotiating simple stress in light of her history; mild difficulties understanding, retaining and following instructions to performing routine, repetitive tasks given her reported short term memory impairment; mild/moderate limitations in concentration persistence and pace in light of her current functioning; and moderately self-sufficient, though her level of self-sufficiency was likely to parallel declines in mental functioning in light of her history of not showing up to work because of depression after mania. (Tr. 28, 347, 358.) The ALJ explained that these

---

[3] Raevin has not challenged the ALJ's assessment of the non-examining state agency opinions other than to note that they are silent on the issue of the need for a therapy animal. Docket Entry 10 at 2-3. However, that does not undermine either

the ALJ's assessment or this Order, especially in light of the remaining record illustrating Raevin's sparse mental health treatment, extensive activities of daily living, and generally normal mental status reports.

opinions were not entirely supported by the medical evidence, which showed that, at the time of the initial consultative examination, Raevin was not receiving any mental health treatment, that she opted not to take any medication until June of 2024 for her conditions, and that despite her mental health impairments, she was able to work on college classes, live alone, and establish and maintain her own business. (Tr. 29.) Raevin has not challenged the ALJ's assessment of these opinions.

The ALJ then noted that Nizae Phillip, MSW, LCSWA, with B&D Integrated Health Services, wrote that in November 2023 Raevin was diagnosed with bipolar disorder, generalized anxiety disorder, and major depressive disorder, and that outpatient therapy services and medication management had been recommended. (Tr. 29, 425.) The ALJ found that, to the extent this statement could be considered a medical opinion under the regulations, it was unpersuasive because there was no vocationally relevant functional assessment. (Tr. 29.) The ALJ further noted that Phillip also wrote in a June 2024 letter that Raevin was disabled and was eligible for an emotional support animal to help alleviate her mental health challenges and improve her ability to live independently. (Tr. 29, 439.) The ALJ found this unpersuasive, noting that the issue of disability is one reserved for the Commissioner and noting further that

Phillip's letter did not contain any vocationally relevant functional assessment. (Tr. 29.)

Likewise, the ALJ noted that Dr. Tasha Holland-Kornegay, with Our Treatment Center, wrote in May 2023 that, upon evaluation, Raevin was "limited [in] one or more major life activities or major bodily functions, including the ability to care for one's self and within their work." (Tr. 29.) Dr. Holland-Kornegay thus recommended an emotional support animal. (Tr. 29, 426.) However, the ALJ found that this recommendation was not persuasive either, because there was no vocationally relevant functional assessment, and there were no treatment notes from Dr. Holland-Kornegay to verify these statements. (Tr. 29.)

In light of all this, the ALJ limited Raevin to, in pertinent part, a reduced range of medium work performing simple, routine, and repetitive tasks, but not at a production rate pace; performing simple work-related decisions; and only frequent interactions with supervisors, and only occasionally interaction with coworkers and the public. (Tr. 22-23.) The ALJ also considered all the material evidence related to Raevin's alleged need for a therapy animal in the workplace (*i.e.*, Raevin's testimony and the two letters from medical providers, neither of which were persuasive) but concluded that this alleged need did not warrant inclusion in the RFC in light of

11

Raevin's sparse mental health treatment, her extensive activities of daily living, her mental status reports upon examination, and the persuasive medical opinion evidence. This is substantial evidence to support the ALJ's RFC determination as well as the omission of a therapy animal from the RFC.

## C. Raevin's Objections to the Contrary Are Not Persuasive.

Nevertheless, Raevin contends that the ALJ erred by failing to either include the use of a therapy animal in the RFC or to explain why he omitted the use of one. Docket Entry 8 at 6. In support, she points to the letter written by Dr. Holland-Kornegay and the letter written by therapist Phillip, both of whom recommended a therapy animal (Tr. 426, 439) and she challenges the ALJ's decision to find them unpersuasive because they lacked "any vocationally relevant functional assessment" (Tr. 29). However, under both the old and new regulations describing how an ALJ is to evaluate medical opinions, vagueness in assessing vocational limitations constitutes a permissible ground for an ALJ to discount a medical opinion in whole or in part.[4] The Court is unaware of any law that would change this general principle when it comes to a therapy animal and ample persuasive case law supports this conclusion.[5] *See also* 20 C.F.R. § 404.1513(a)(2) (providing that "[a]

---

[4] *See*, *e.g.*, *Wesley v. Kijakazi*, No. 1:20CV364, 2021 WL 4129234, at *11 (M.D.N.C. Sept. 9, 2021) ("Vagueness constitutes a permissible grounds for an ALJ to discount a medical opinion.") (collecting cases); *Betty C. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-CV-00246-JMC, 2023 WL 7386206, at *5 (D. Md. Nov. 8, 2023) (collecting cases); *Samuel P. v. Comm'r of Soc. Sec.*, No. 20-5881, 2021 WL 5769404, at *6 (W.D. Wash. Dec. 6, 2021); *Langford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00665-CEH, 2023 WL 3058160, at *26 (N.D. Ohio Apr. 24, 2023); *Chiccola v. Comm'r of Soc. Sec.*, No. 1:18 CV 2940, 2020 WL 1031488, at *8 (N.D. Ohio Mar. 3, 2020) (internal citations omitted) (collecting cases).

[5] *See Leticia B. v. King*, No. CV 24-116 MV/GJF, 2025 WL 289420, at *10 (D.N.M. Jan. 24, 2025) (finding no reversible error where "Dr. Stromberg did *not* opine that Plaintiff required an emotional support animal in order to perform any work-related functions, nor did he discuss what Plaintiff could do in a work setting despite her symptoms and diagnoses"); *Angela H. v. Comm'r, SSA*, No. 2:22-cv-4461, 2024 WL 1259875, at *4 (S.D. Ohio Jan. 30, 2024) (holding that a letter recommending that the plaintiff obtain an emotional support animal to help alleviate issues with social interaction, stress, and anxiety and to enjoy the use of her dwelling was not a medical opinion because it did not describe the work functions she could perform despite her symptoms); *Ashley D. v. Comm'r of Soc. Sec.*, No. CV 22-11344, 2023 WL 5266849, at *10 (E.D. Mich. July 17, 2023) (finding no error where "Dr. Cousineau's letter [does not] indicate how the use of an emotional support dog would bear on Plaintiff's

medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [specified] abilities").

More specifically, Dr. Holland-Kornegay's letter references generic "mental health conditions," asserts in a conclusory fashion that Raevin is disabled, and then asserts vaguely that she is "substantially limit[ed in] one or more major life activities or major bodily functions, including the ability to care for [her] self and within [her] work." (Tr. 426.) Dr. Holland-Kornegay then "recommend[s] an emotional support animal" as "necessary to provide therapeutic emotional support that alleviates symptoms of [her] client's impairment, and to enhance [her] client's ability to function and live independently and fully use and enjoy

the dwelling unit you own and/or administer." (Tr. 426.) She states, "My client's emotional support animal helps them deal with the stress and pain associated with their disability." (Tr. 426.)

The ALJ did not err here. The question of disability is reserved to the Commissioner and the ALJ accurately stated the same. *See* 20 C.F.R. § 404.1520b(c)(3). Nor, in light of the ample case law cited above, *supra* note 5, and the ALJ's evaluation of the overall record, did the ALJ err in finding this vague, conclusory, and unsupported letter unpersuasive, especially where there are no treatment notes in the record from Dr. Holland-Kornegay.

Therapist Nizae Phillip's letter is similar to Dr. Holland-Kornegay's. Phillip's letter asserts that "[b]ased on my evaluation of [Raevin's] mental

---

ability to work.") (citations omitted); *Horne v. Saul*, No. 2:19-CV-013-DCP, 2020 WL 1547068, at *12 (E.D. Tenn. Mar. 31, 2020) ("[T]he Court finds that Plaintiff has failed to establish that a service animal was medically necessary. The referenced letter . . . does not . . . provide an opinion on the impact of a service animal on Plaintiff's ability to work."); *Nancy J. M. v. Saul*, No. ED CV 19-01144-RAO, 2020 WL 1975364, at *14 (C.D. Cal. Apr. 24, 2020) ("[T]he ALJ gave no weight to Dr. Reid's opinion that Plaintiff requires an emotional support animal because the opinion did not provide specific information regarding [Plaintiff's] work-related abilities.") (citation omitted); *Cordell v. Saul*, No.

3:19-CV-47, 2019 WL 6257994, at *19 (N.D.W. Va. Nov. 4, 2019) ("[T]he ALJ does not need to consider the use of a service dog in Plaintiff's RFC as there has been no testimony regarding . . . whether Plaintiff requires the service dog to perform work[.]") (collecting cases); *Payano v. Colvin*, No. 2:15-cv-00294-RFB-GWF, 2017 WL 4778593, at *4 (D. Nev. Oct. 23, 2017) (finding that a letter from a VA psychiatrist recommending the use of a service dog when out in public "alone does not support an assessment that the dog is necessary for Plaintiff to work, nor describe how she would need any dog in a work setting") *adopted in pertinent part in*, 2017 WL 4778593, at *9 (D. Nev. Oct. 23, 2017).

13

health condition and considering her history and functional limitations stemming from emotional/mental health barriers, it is evident that [she] qualifies as having a disability[.]" (Tr. 439.) Phillip notes that Raevin is "eligible to have an emotional support animal" "[t]o help alleviate [her] challenges and improve her ability to live independently" and "recommend[s] an animal [to] assist [her] in managing her disability." (Tr. 439.)

Again, the ALJ did not err here. As noted, the question of disability is reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3). Nor, in light of the authorities cited above, *supra* note 5, and the ALJ's evaluation of the overall record, did the ALJ err in finding this vague, conclusory, and unsupported letter (which does not reference the workplace or assert any functional limitation) unpersuasive. *See also Sandra A. v. O'Malley*, No. 3:23-CV-417-SLS, 2024 WL 4351441, at *8 (E.D. Va. Sept. 30, 2024) (finding insufficient "evidence of any need for a service dog in the workplace" where "Nurse Practitioner Moore-Zierow recommended that Plaintiff use an emotional support animal in her home and during aircraft travel to alleviate her emotional difficulties and enhance her ability to live independently.").

Because the ALJ gave good reasons for finding the two letters recommending a therapy animal unpersuasive, he satisfied any obligation to determine whether Raevin's alleged therapy dog use qualified as medically necessary. *See supra* note 5. Thus, if the medical necessity standard were to apply here, Raevin's objection would fail for this reason alone. *See id.* But even if the medical necessity standard does not apply here, Raevin's objection still fails in light of the ALJ's discussion of all of the evidence in the record, including Raevin's sparse mental health treatment, her extensive activities of daily living (including going to college and running a business), her mental status reports upon examination, and the medical opinion evidence. *See id.*

In support of her challenge to the ALJ's decision, Raevin also points to her testimony at the administrative hearing. Docket Entry 8 at 4-5 *referencing* Tr. 49 ("[S]he helps with my anxiety, depression, the symptoms of my bipolar disorder. She does help me kind of keep my daily needs. She she'll let me know if it is time to get up or time to go to bed. She'll let you know that I need to eat sometimes or sit down if my anxiety is getting a little out of whack."). However, the ALJ specifically referenced this testimony as part of his summation of Raevin's allegations (Tr. 23) and then went on to provide good reasons for not fully crediting all of her purported limitations. Again, these reasons include Raevin's sparse mental health treatment, her extensive activities of daily living (including going to college and

14

running a business), her mental status reports upon examination, and the persuasive medical opinion evidence. These are good reasons to partially discount her allegations.

The remainder of Raevin's challenge to the ALJ's decision amounts to a recitation of evidence that if fully credited in her favor, would render her disabled. Docket Entry 8 at 5-11. However, the ALJ evaluated the relevant and material evidence in this case, reconciled it when necessary, and reasonably concluded that Raevin was not disabled under the Act. While Raevin disagrees and points to evidence that the ALJ already considered to argue for the inclusion of a therapy animal in the RFC, this does not mean that the ALJ's decision was erroneous or that she can ask this Court to reweigh the evidence to arrive at a different conclusion.

In the end, remand is not warranted, given that the ALJ already provided a logical bridge connecting substantial evidence to an RFC that did not include a therapy animal.[6] In other words, the Court is not left to guess why the ALJ declined to include a therapy animal in the RFC. *See Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015) (observing that a remand is proper where a court if "left to guess about how the ALJ arrived at his conclusions"). The ALJ addressed all the material evidence on the issue and gave good reasons backed by substantial evidence in support of the RFC. For all of these reasons, the Commissioner's decision is affirmed.

## V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

JoAnna Gibson McFadden
United States Magistrate Judge

June 12, 2026

---

[6] Citing SSR 11-2p, the Commissioner contends that "the ALJ was also not required to consider [Raevin's] alleged need for a service animal," Docket Entry 9 at 7 citing SSR, 11-2P, 2011 WL 4055665, and there is some support in the caselaw for this, *see W.D. v. Dudek*, No. 1:24-CV-00444-SBP, 2025 WL 947533, at *6 n.8 (D. Colo. Mar. 28, 2025) ("Several courts have entertained the notion that if a service animal or [emotional support animal] is considered an accommodation, then an ALJ is not permitted to consider any limitations posed by the need for a service animal or ESA.") (collecting cases). However, because the Fourth Circuit has not definitely resolved this issue, *Shue*, 2024 WL 2827936, at *4, the Court has not disposed of this case on that ground and has instead fully entertained the merits of Raevin's challenge and found them to be unpersuasive for the reasons described herein.